# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
In re:                                                      :   Chapter 11
                                                            :
Décor Holdings, Inc., *et al.*,[1]                          :   Case No. 19-71020 (REG)
                                                            :   Case No. 19-71022 (REG)
                                                            :   Case No. 19-71023 (REG)
                                                            :   Case No. 19-71024 (REG)
                                                            :   Case No. 19-71025 (REG)
                                                            :
                            Debtors.                        :   Jointly Administered
                                                            :
----------------------------------------------------------- X   Re:  Docket Nos. 13

**AMENDED EMERGENCY ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING AN INTERIM HEARING, AND (VII) <u>GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), *inter alia* seeking, among other things:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); The Robert Allen Duralee Group, Inc. (8435); The Robert Allen Duralee Group, LLC (1798); and The Robert Allen Duralee Group Furniture, LLC (2835). The corporate headquarters and the mailing address for the Debtors listed above is 49 Wireless Boulevard, Suite 150, Hauppauge, NY 11788. The Debtors also maintain a separate corporate office at 2 Hampshire Street, Suite 300, Foxboro, MA 02035.

[2]    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Ratification Agreement.

(1) Authorization for the Debtors to obtain post-petition financing in the form of a revolving credit facility in accordance with the terms and conditions set forth in the Existing Credit Agreement, (as defined in the Ratification Agreement and referred to herein as the "<u>Pre-Petition Credit Agreement</u>"), as ratified and amended by that certain Ratification and Amendment, dated as of February __, 2019 (the "<u>Ratification Agreement</u>"), a copy of which is attached to the Motion (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein and therein, the "Loan Documents"), by and among the Borrowers, Wells Fargo Bank, National Association, as agent and co-collateral agent ("<u>Agent</u>"), and the lenders party thereto (the "<u>DIP Lenders</u>"), and in accordance with this order ("<u>Emergency Order</u>"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code

(2) Authorization for Borrowers to remit all collections, asset proceeds and payments to Agent for application, or deemed application, first to all Pre-Petition Obligations (as defined in the Ratification Agreement) until such obligations are fully repaid in accordance with the Credit Agreement and then to the repayment of all Post-Petition Obligations (as defined in the Ratification Agreement) in accordance with any of the Loan Documents (as defined in the Ratification Agreement);

(3) Authorization for the Debtors to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Agent, for the benefit of itself and the other DIP Lenders, in respect of all Post-Petition Obligations.

(4) Authorization to provide adequate protection to the Agent and the DIP Lenders under any of the Loan Documents;

(5) The modification of the automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

(6) Setting on February 26, 2019 at 10:00 a.m. for an interim hearing on the Motion ("Interim Hearing") to consider entry of an interim order (the "Interim Order") authorizing, among other things, the continuing borrowing under the Financing Agreements on an interim basis, as set forth in the Motion and any of the Loan Documents filed with the Court, including the granting to Agent and Lenders senior security interests and liens described above and super-priority administrative expense claims and related relief;

(7) The initial hearing on the Motion having been held by this Court on February 15, 2019 (the "Emergency Hearing"), and upon the record made by the Debtors at the Emergency Hearing, including this Motion, the Declaration and testimony of Lee Silberman in Support of First Day Motions (the "First Day Declaration"), the testimony of Timothy Boates, the Debtors' proposed Chief Restructuring Officer, at the Emergency Hearing, and the filings and pleadings in the above-captioned Chapter 11 cases (the "Cases"), the Court having found that the interim relief as described on the record and as provided for herein is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and appropriate notice of the Motion, the relief requested therein, and the Emergency Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rule 4001 on (i) counsel to the Agent; (ii) the office of the United States Trustee (the "U.S. Trustee"), (v) the holders of the thirty (30) largest unsecured claims, on a consolidated basis, against the Debtors' estates (the "30 Largest Unsecured Creditors"), (vi) the Internal Revenue Service and applicable state taxing authorities, (vii) all parties which, to the best of the Debtors'

knowledge, information, and belief, have asserted or may assert a lien in any of the Debtors' assets; (viii) the Debtors' landlords, and (ix) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  Disposition.  The Motion is hereby granted in accordance with the terms of this Emergency Order.

B.  Notice.  Notice was given in the manner described in the Motion.  The Emergency Hearing was held pursuant to Bankruptcy Rule 4001(C) (2).  Under the circumstances, and as immediate and irreparable loss would be caused to the estate if immediate financing were not obtained, the parties to which notice was given and the manner of notice was the best available under the circumstances and constitutes due and sufficient notice.

C.  Findings Regarding the Post-Petition Financing.

(i)  Post-Petition Financing.  The Debtors have requested from each of the Agent and the DIP Lenders, and the Agent and DIP Lenders are willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Emergency Order, the Emergency and any of the Loan Documents, respectively.

(ii)  Need for Post-Petition Financing.  The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their

4

employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates (as defined below) for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Agent and DIP Lenders as set forth in this Emergency Order, any of the Loan Documents, and other financing agreements, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the recovery to all creditors of the Estates.

(iii) No Credit Available on More Favorable Terms. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the Agent and DIP Lenders pursuant to the Loan Documents.

(iv) Budget. The Debtors have prepared and delivered to Agent an initial 10-week budget (as defined in the Ratification Agreement, the "Ten-Week Budget") and a Two-Week Budget to cover the Emergency Financing Period (defined below), a copy of which is

attached here to as Exhibit 2 (the "Emergency Two-Week Budget").  Such Ten-Week Budget and Emergency Two-Week Budget have been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements of the Debtors for the periods covered thereby.  The Debtors represent that the Ten-Week Budget and Emergency Two-Week Budget are achievable in accordance with the terms of the Loan Documents and this Emergency Order and will allow the Debtors to operate at all times during these Cases.

(v) Business Judgment and Good Faith Pursuant to § 364(e). The terms of the Loan Documents and this Emergency Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents and this Emergency Order have been negotiated in good faith and at arms' length by and among the Debtors and Agent, with all parties being represented by counsel.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Agent and DIP Lenders, as that term is used in § 364(e) of the Bankruptcy Code.

(vi) Immediate Entry. Sufficient cause exists for immediate entry of this Emergency Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Emergency Order.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

Section 1.    Authorization and Conditions to Financing.

    1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Emergency Order.  This Amended Emergency Order amends, supersedes and replaces that certain Emergency Financing Order dated February 20, 2019 [Doc No. 61].

    1.2    Authorization to Borrow Guaranty and Use Loan Proceeds.  Borrowers are hereby authorized and empowered to immediately borrow and obtain Loans, and to incur other Post-Petition Obligations, and the Guarantors are hereby authorized to guaranty such Post-Petition Obligations, all pursuant to the terms and conditions of this Emergency Order during the period commencing on the date of this Emergency Order through and including February 26, 2019 (the "Emergency Financing Period").  Subject to the terms and conditions contained in this Emergency Order, Borrowers shall use the proceeds of the Loans, and other credit and financial accommodations provided by Agent and DIP Lenders under the Emergency RAA (defined below) and any prepetition Loan Documents solely for payment of expenses set forth in the Emergency Two-Week Budget and amounts owing to Agent and DIP Lenders in accordance with the terms and conditions of such Loan Documents and this Emergency Order.  The Debtors are authorized, but not directed, to pay the pre-petition insurance and shipping expenses up to the amounts set forth in the Emergency Two-Week Budget as critical vendor payments essential to maintaining and preserving the Debtors' business operations and Estate property.  The Debtors are not authorized to pay the line item for "Pre-petition Commissions - $6,200" during the Emergency Financing Period

    1.3    Financing Documents

        (a)    Authorization.  During the Emergency Financing Period, Debtors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms,

7

conditions and covenants of the Emergency Ratification and Amendment Agreement in the form annexed hereto as Exhibit 1 (the "Emergency RAA") and the other prepetition Loan Documents. Upon execution and delivery of any of the Loan Documents, such agreements and documents, as modified by the Emergency RAA, shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of such Loan Documents and this Emergency Order. For the avoidance of doubt, (i) the terms of the Ratification Agreement are not being approved by this Emergency Order, but will be considered at the Interim Hearing, and (ii) the Court is not exercising jurisdiction over or making any finding or ruling with respect to the execution as a loan party or guarantor of the Emergency RAA by any non-debtor affiliates of the Debtors.

(b)    Approval; Evidence of Borrowing Arrangements.    All terms, conditions and covenants set forth in any of the Loan Documents, as modified by the Emergency RAA, are approved to the extent necessary to implement the terms and provisions of this Emergency Order.

1.4    Automatic Stay.    The automatic stay under section 362 of the Bankruptcy Code is hereby modified to extent necessary to permit the post-petition financing in the form of a revolving credit facility to perform in accordance with the terms and conditions set forth in the Existing Credit Agreement and the Emergency RAA.

Section 2.    Lien Priority; Superpriority Administrative Claim Status.

2.1    Post-Petition Lien.

(a)    Lien Priority in Collateral.    The liens and security interests of Agent and DIP Lenders granted under the Loan Documents and this Emergency Order in the Collateral (as defined in any of the Loan Documents) securing all Post-Petition Obligations (as

defined in any of the Loan Documents) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise. For the purposed of this Emergency Order, "Collateral" shall exclude chapter 5 claims or the proceeds thereof.

        2.2    <u>DIP Loans</u>. For all Post-Petition Obligations now existing or hereafter arising pursuant to this Emergency Order, any of the Loan Documents or otherwise, Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over all administrative expenses or priority claims in these Cases, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (the "<u>DIP Loan Superpriority Claim</u>"). For the avoidance of doubt, no rollup into a DIP Loan Superprioirty Claim shall be allowed pursuant to this Emergency Order other than with respect to any and all post-petition advance made by the DIP Lenders prior to the expiration of this Order

        2.3    <u>Use of Cash Collateral; Adequate Protection.</u>

        (a)    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, and any of the Loan Documents, and in accordance with the Emergency Two-Week Budget, Borrowers shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Emergency Order and terminating upon the final day of the Emergency Financing Period. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or

other proceeds resulting therefrom, except as expressly permitted in this Interim Order, any of the Loan Documents and in accordance with the Emergency Two-Week Budget.

(b)   Replacement Liens.  As adequate protection for the diminution in value of their interests in the Collateral (including Cash Collateral) on account of the Debtors' use of such Collateral (including Cash Collateral), the imposition of the automatic stay (collectively, the "Diminution in Value"), the Agent, for the benefit of itself and the DIP Lenders, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "ABL Replacement Lien").  The ABL Replacement Lien shall be junior and subordinate only to Agent's and DIP Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)   To the extent of any diminution in the value of the interest of Corber Corp., Ronald H. Cordover, Jeffrey A. Cordover, and Valerie J. Cordover Katz (the "Subordinated Noteholders") in the Collateral, the Subordinated Noteholders are hereby granted a junior priority replacement lien to secure such diminution, which replacement lien shall be junior and subordinate in all respects to the ABL Replacement Lien and all other liens granted to the Agent and the DIP Lenders to secure the Post-Petition Obligations and shall otherwise be subject to the terms of that certain Amended and Restated Intercreditor and Subordination Agreement, dated March 31st, 2017.

Section 3.   Default; Rights and Remedies; Relief from Stay.

3.1   Events of Default.  The occurrence of any of the following events shall constitute an "Event of Default" under this Emergency Order: (a) any Debtor's failure to

10

perform, in any respect, any of their obligations under this Emergency Order; or (b) an "Event of Default" under any of the Loan Documents, as modified by the Emergency RAA.

        3.2    <u>Rights and Remedies upon Event of Default</u>. Upon the occurrence of and during the continuance of an Event of Default after one (1) business day notice, the (a) Debtors shall be bound by all the restrictions, prohibitions and other terms as provided in this Emergency Order and any of the Loan Documents and (b) the Agent shall be entitled to take any act or exercise any right or remedy as provide in this Emergency Order or any of the Loan Documents, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans on behalf of the Debtors, setting off any Obligations with Collateral or proceeds in Agent's possession and enforcing any and all rights with respect to the Collateral. Agent and DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that with the giving of notice or the passage of time, or both, would constitute and Event of Default.

        3.3    <u>Disposition of Collateral</u>. Debtors shall not sell, transfer, lease, encumber, transfer, return (or agree to return), consent to any creditor setting off against or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of any of the Loan Documents and the Emergency Two-Week Budget, without the prior written consent o Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or any DIP Lenders) an, in each case, an Order of this Court.

        3.4    <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All post-petition advances and other financial accommodations under any of the

Loan Documents are made in reliance on this Emergency Order and there shall not at any time be entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order which (a) authorizes the use of cash collateral of Debtors in which Agent or DIP Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Agent or DIP Lenders have a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or DIP Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and DIP Lenders herein; <u>unless</u>, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or any DIP Lender, or (y) such other order requires that all Post-Petition Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of any of the Loan Documents (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtors to Agent and DIP Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent.

Section 4.     <u>Interim Hearing and Response Dates.</u>

The Interim Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for February 26, 2019, at 10:00 a.m. before this Court. The Debtors shall promptly mail copies of this Emergency Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such

Committee's counsel, if same shall have filed a request for notice. The Debtors may serve the Motion and the Emergency Order without the exhibits attached thereto as such exhibits are voluminous and shall be made available free of charge at the office of Debtors' counsel. Such notice is deemed good and sufficient and that no further notice need be given. Any party in interest objecting to the relief sought at the Interim Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors, Hahn & Hessen LLP, 488 Madison Ave. New York, New York 10022 Attn: Mark T. Power, Esq. and Janine M. Figueiredo, Esq.(212) 478-7400 (b) counsel for the Agent, Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Daniel F. Fiorillo, Esq. and Jonathan N. Helfat, Esq., Fax: (212) 682-6104; (c) John A. Morris, Esq., Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017-2024, counsel to Corber Corp., (d) counsel to any Committee; and (e) the U.S. Trustee,; and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, in each case, to allow actual receipt of the foregoing no later than 10:00 a.m., prevailing Eastern time, on February 25, 2019.



**Dated: Central Islip, New York**
**February 22, 2019**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**